## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **EURO-PRO OPERATING LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO._____** |
| | ) | |
| **THANE INTERNATIONAL, INC. and** | ) | **COMPLAINT** |
| **HSN, INC.** | ) | |
| | ) | **JURY TRIAL DEMAND** |
| **Defendants.** | ) | |
| _____ | ) | |

## COMPLAINT FOR FALSE ADVERTISING, UNFAIR COMPETITION, TRADEMARK INFRINGEMENT AND DESIGN PATENT INFRINGEMENT

1.      This is an action on behalf of Euro-Pro Operating LLC ("Euro-Pro" or "Plaintiff")

for false advertising, design patent infringement, trademark infringement and unfair competition

arising from: (a) Thane International, Inc.'s ("Thane") and HSN, Inc.'s ("HSN") (collectively

"Defendants") false and misleading advertising claims made to promote the H20 Mop X5 5-in-1

Steam Cleaner (the "X5"), which violate section 43(a)(1)(B) of the Lanham Act; (b) Defendants'

production and/or sale of the X5 accessory, the "Dusting and Polishing Wand" which infringes

Euro-Pro's Design Patent in violation of 35 U.S.C. § 271; and (c) Thane's use of infringing

slogans which are confusingly similar to Euro-Pro's federally registered PROOF IS ON THE

PAD mark in violation of 15 U.S.C. §§ 1114 and 1125(a).  Defendants' actions are likely to

deceive consumers, causing damage to the consuming public, as well as Euro-Pro.

2.      Steam mops are a popular and rapidly growing segment of the household cleaning

product market as they provide effective chemical-free cleaning.  Steam mops are especially

popular among households with children and pets where concerns of effectiveness and chemical-

free cleaning are highest.  Currently consumer steam cleaning products account for over $400 million in annual sales.

3.      Euro-Pro has developed and manufactured consumer steam cleaning products for many years.  Euro-Pro makes a variety of steam products, including but not limited to, steam mops, handheld steam cleaners, and irons.  With millions of steam products sold, Euro-Pro is a constant innovator in the field of steam cleaning, developing new and more efficient products each year.  In fact, Euro-Pro is the undisputed market leader in steam cleaning products with more than $330 million in retail and direct sales in 2010, which upon information and belief, is approximately 80% of the total steam cleaning market.

4.      Euro-Pro's innovation in the steam market is not limited to steam cleaning units but also extends to various accessories and attachments to those units.  Specifically, Euro-Pro has designed a variety of attachments and steam mop pads for its steam cleaning products.

5.      Upon information and belief, in or around December of 2010, Defendants began selling the X5 steam mop.  In doing so, Defendants utilized the same advertising and distribution channels in which Euro-Pro operates—namely direct response television and Internet advertisements.  As set forth more fully below, the marketing and advertising materials used by Defendants for the X5 mop contain numerous false and misleading statements concerning the X5's functionality, efficacy, and quality.

6.      Upon information and belief, Defendants collectively have spent hundreds of thousands of dollars disseminating these false statements throughout the world via the Internet and throughout the United States via national television marketing campaigns, which include but are not limited to: (1) at least one 30-minute nationally-aired infomercial by Thane, promoting the X5; (2) an approximately 2-minute nationally-aired commercial by Thane, promoting the X5;

(3) an approximately 2-minute nationally-aired live television segment by HSN, promoting the X5, a video recording of which is also currently posted on HSN's website, *available at* http://www.hsn.com/infomercial/h2o-mop-x5-5-in-1-steam-cleaner-with-microfiber-pads_p-6296518_xp.aspx; and (4) an approximately 30-minute nationally-aired live television segment by HSN, promoting the X5, a video recording of which is also currently posted on HSN's website, *available at* http://www.hsn.com/infomercial/h2o-mop-x5-5-in-1-steam-cleaner-with-super-clean-kit_p-6469661_xp.aspx?o=PD-RI&sz=0&ocm=&attr=&subcat=&cat=&dept=&sf=&gs=&prev=&cm_sp=Recommended*PD*right.

7.     Given Euro-Pro's superior market position in the steam mop product segment, upon information and belief, any sales made by Defendants are likely to come at Euro-Pro's expense, constituting lost sales for Euro-Pro.

8.     In addition to their false advertising, Defendants seek to capitalize from Euro-Pro's intellectual property by misappropriating one of Euro-Pro's design patents.  Defendant Thane is also misappropriating Euro-Pro's federally registered trademark.  Such actions are not in the spirit of fair competition, harm Euro-Pro in the market, and confuse consumers as to the source, origin, and/or affiliation of Defendants' products.

9.     For these reasons and those set forth below, Euro-Pro seeks injunctive relief against Defendants' continuing production and sale of the X5 attachments which violate Euro-Pro's intellectual property rights.  Additionally, Euro-Pro seeks injunctive relief against Defendants' continued and brazen false advertising concerning the performance, nature, and/or quality of the X5 mop.  Finally, Euro-Pro seeks monetary damages resulting from Defendants' infringement of Euro-Pro's intellectual property rights, and their false and misleading

advertising, including but not limited to actual damages, enhanced damages, Defendants' profits, and Euro-Pro's attorneys' fees and costs of this suit.

## PARTIES

10.     Plaintiff Euro-Pro is a corporation duly organized and existing under the laws of the State of Delaware, with its principal office located at 180 Wells Avenue, Suite 200, Newton, MA 02459.

11.     Upon information and belief, Defendant Thane is a corporation duly organized and existing under the laws of the State of Delaware, with a principal place of business at 78-140 Calle Tampico, La Quinta, CA 92253.

12.      Upon information and belief, Defendant Thane markets and sells direct to consumer products in various categories including fitness equipment (*e.g.*, the AbDoer Twist product), cooking products (*e.g.*, the Flavorwave Oven® Turbo), dog training systems (*e.g.*, the DogFather™), undergarment products (*e.g.*, Slim 'N Lift® Supreme Comfort™), and cleaning products.  One such cleaning product sold by Thane is the H20 Mop X5, which Thane's website touts as "a 5-in-1 steam-cleaning machine".  Thane sells its products via the Internet and infomercials, including, upon information and belief, to consumers in this judicial district.

13.     Upon information and belief, Defendant HSN is a corporation duly organized and existing under the laws of the State of Delaware, with a principal place of business at 1 HSN Drive, St. Petersburg, Florida 32729.

14.     Upon information and belief, Defendant HSN is a multichannel retailer that advertises and sells various consumer products, including cleaning products.  One such cleaning product sold by HSN is the X5 steam cleaner.  HSN sells its products via the Internet and

infomercials appearing on its television networks, including, upon information and belief, to consumers in this judicial district.

## JURISDICTION AND VENUE

15.     The Court has subject matter jurisdiction over each of the claims pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1338(b), in that the First, Third, and Fourth Claims arise under the Lanham Act, 15 U.S.C. §§ 1051, *et seq* and the Second Claim arises under the Patent Act, 35 U.S.C. §§ 201, *et seq*.

16.     This Court has jurisdiction over Defendants because, upon information and belief, they transact business in Massachusetts, have caused and are continuing to cause tortious injury in the Commonwealth, and regularly do or solicit business in the Commonwealth.  Indeed, upon information and belief, Defendants sell products directly to persons residing in Massachusetts via the Internet and telephone.

17.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b).

## FACTS COMMON TO ALL CLAIMS

18.     Euro-Pro is a leading marketer of portable household mechanical cleaners, including full-sized, canister, stick, and hand vacuums; irons and garment steamers; sweepers; and steam cleaners and mops.

19.     Specifically, Euro-Pro has developed and marketed a line of portable household steam cleaners which include, but are not limited to, the Euro-Pro Shark® Professional Steam Pocket® Mop (Model No. S3601), an upright electric steam mop, the Euro-Pro Shark® Professional Steam Pocket® Mop (Model No. S3901), an upright electric steam mop with a built in hand-held steam cleaner attachment, and the Euro-Pro Shark® Portable Steam Pocket®

(Model No. SC630), a portable, hand-held steam cleaner (collectively "Euro-Pro Steam Cleaners").

20.     Euro-Pro's Steam Cleaners sanitize and clean hard, non-porous surfaces throughout a consumer's home or office without the use of chemicals.  Euro-Pro's Steam Cleaners can be used on floors, carpets, appliances, countertops, blinds, etc.  Because they use no detergents or chemicals, the Euro-Pro Steam Cleaners are safe for upholstery, glass, tile, hardwood, stainless steel, marble, ceramic, vinyl, fiberglass, and mirrors.

21.     Euro-Pro sells the Euro-Pro Steam Cleaners both to retail outlets and directly to consumers.  Euro-Pro extensively advertises the Euro-Pro Steam Cleaners through national television advertising campaigns, national print advertising campaigns, in-store collateral, product packaging, and Internet advertising.  As a result of its advertising, Euro-Pro's Steam Cleaners have attained widespread consumer awareness, and Euro-Pro along with its Shark® brand, has become a household name and the market leader in the steam cleaning sector.

22.     Euro-Pro owns numerous trademarks, which it uses in connection with its steam cleaning products.  Relevant to this action is the word mark THE PROOF IS ON THE PAD, which Euro-Pro has registered with the United States Patent and Trademark Office on the Principal Register, U.S. Registration No. 3,554,904 (the "Mark"), for use in connection with "multi-purpose steam cleaning machines and parts and accessories therefor."  A true and correct copy of the registration certificate is attached hereto and incorporated herein as Exhibit A.

23.     Euro-Pro has been using the Mark continuously since July 2007, which, upon information and belief, is over three years prior to the date on which Defendant Thane began promoting, advertising, and/or selling the X5 mop.  Euro-Pro's use of the Mark includes placing it in its advertising and promotional materials, including but not limited to on the box of its

popular Shark® Steam Mop (Model No. 3101) as well as in the infomercial for the Euro-Pro's

Shark® Steam Pocket® Mop (Model No. 3501).  Euro-Pro continues to sell both the Shark®

Steam Mop (Model No. 3101) and the Shark® Steam Pocket® Mop (Model No. 3501) today.

24.     As a result of Euro-Pro's extensive advertising, strong sales, and superior

products, Euro-Pro has built substantial consumer goodwill associated with its Mark.

25.     Euro-Pro also owns an extensive patent portfolio for various aspects of its

cleaning products and accessories, including U.S. Patent No. D633,669 (the "'669 Patent"),

entitled "Shaggy Steam Pocket," which the United States Patent and Trademark Office duly and

legally issued on March 1, 2011 to Mark Rosenzweig.  Subsequently, the inventor assigned the

'669 Patent to Euro-Pro.

26.     The scope of the '669 Patent encompasses "[t]he ornamental design for a shaggy

steam pocket, as shown and described" in the seven figures included in the '669 Patent.  Figure 1



FIG. 1

of the '669 Patent covers the following design:                .  A true and correct copy of the '669

Patent is attached hereto and incorporated herein as Exhibit B.

27.     Euro-Pro manufactures and sells the Shark® Portable Steam Pocket® (SC 630)

and accessories, which is a portable, hand-held steam cleaner that includes a shaggy steam

pocket covered by the '669 Patent.

28.     Upon information and belief, in or around December of 2010, Defendants began

advertising and offering for sale the X5 steam mop, which they market as a 5-in-1 steam cleaner,

allegedly fulfilling the role of a floor cleaner, carpet steamer, hand held steamer, window cleaner, and garment steamer in one product.

29.      According to Defendants, once plugged-in, the X5 steam mop creates and stores steam.  Once the mop is sufficiently heated, a "ready to use" indicator will illuminate.  The consumer is then instructed to depress an O/I button and steam is emitted from the mop.  The instruction booklet for the X5 instructs the user to then: "slowly pass over the surface to be cleaned.  The absorbent mop cloth picks up the dirt loosened by the steam.  Apply steam liberally.  Keep a towel handy and wipe away any excess water that may accumulate."

30.      To sanitize, the user manual for the X5 instructs the consumer to "leave the H2O Mop X5 at high steam setting over the steam area for about 10 seconds, but no longer than 15 seconds."

31.      Additionally, Defendants advertise that the X5 can also be used as a hand-held steamer.  The hand-held is prepared for use in much the same way as the mop.  Once plugged-in, the X5 hand-held steamer creates and stores steam.  Once the mop is sufficiently heated, a "ready to use" indicator will illuminate.  The consumer then depresses an O/I button and steam is emitted from the hand-held steamer.  The instruction booklet for the X5 instructs the user of the hand-held to: "slowly pass over surfaces to be cleaned.  Apply steam liberally.  Keep a towel handy and wipe away any excess water that may accumulate."

32.      To sanitize as a hand-held, the user manual for the X5 instructs the consumer in the following manner: "to sanitize your work surfaces, kitchen countertops, sinks, bathrooms, etc., use the Hand-Held Steamer over the same area for about 15 seconds."

33.     Upon information and belief, Defendant Thane advertises the X5 through, *inter alia*, its print advertisements, television advertisements/infomercials, and the Internet, *see* http://www.thane.com/products/housewares/h2omopx5/h2omopx5.php.

34.     Upon information and belief, Defendant HSN advertises the X5 via, *inter alia*, its live television advertisements/infomercials through retail network television programs, and the Internet, *see* http://www.hsn.com/infomercial/h2o-mop-x5-5-in-1-steam-cleaner-with-super-clean-kit_p-6469661_xp.aspx?o=PD-RI&sz=0&ocm=&attr=&subcat=&cat=&dept=&sf=&gs=&prev=&cm_sp=Recommended*PD*right.

35.     Upon information and belief, the X5 and its accessories are sold through television, telephone, Internet, and retail sales channels.

36.     Defendants market the X5 and its accessories to the same consumers who are actual or potential purchasers of the Euro-Pro Steam Cleaners.

### *Defendants' False and Misleading Advertising Claims*

37.     Defendants' advertisements, infomercials, television programming, and/or other promotional materials for the X5 contain materially false and misleading statements of fact and/or omit relevant facts concerning the nature, quality, and performance of the X5.  These statements are harmful to Euro-Pro and consumers alike.

38.     Defendants have extensively marketed the X5 steam mop, advertising, *inter alia*, the X5's alleged ability to sanitize.

39.     Such misrepresentations include, but are not limited to, the following false and misleading claims in Defendant Thane's 30-minute, nationally-airing infomercial:

        a.   "Sanitize, deodorize, and clean using just the power of steam."

b. "You're cleaning, you're sanitizing, and you're deodorizing all at the same time."

c. "Sanitize pillows and bedding."

d. "Cleaning, polishing, sanitizing, all at the same time."

e. "the only five in one steam machine that cleans and sanitizes every surface of your home."

f. "While the X5 makes it easy to clean the stains you can see, what about the ones you can't. Under the black light, you can see a mess. It could be viruses or bacteria. If you have kids or pets, it needs to be cleaned. The X5 cleans at 230 degrees with the power of microfiber, so it cleans and sanitizes without chemicals.'"

g. "You're cleaning, you're sanitizing, and you're deodorizing all at the same time."

h. Statement from a pre-school director featured in Defendant's infomercial:

 i. "We've used the steamer with the carpet in our one-year-old class because they are always on the floor. Just steam those floors. We know they're clean so if the children do drop something and put it in their mouth before we can get to it, at least it's clean."

 ii. "Safer, more sanitized."

 iii. "Germs are everywhere, between coughs and colds that go around. Children share toys; they share germs as well. With the X5 we use the steamer on the toys, we just lay them straight down on the countertop, use the X5 to sanitize the toys, and children use them right away, and they are sanitized in just minutes."

 iv. "We've used [the X5] on the chairs, the sinks, the counters, to sanitize the cots down."

 v. "It cuts our cleaning time in half."

40. Additionally, Defendants make numerous false and misleading advertising claims in their promotion of the X5, including, but not limited to, the following sanitization claims made in HSN's short and long live nationally-airing television programs, promoting the X5, video

recordings of which are currently posted on HSN's website, available at

http://www.hsn.com/infomercial/h2o-mop-x5-5-in-1-steam-cleaner-with-super-clean-kit_p-

6469661_xp.aspx?o=PD-

RI&sz=0&ocm=&attr=&subcat=&cat=&dept=&sf=&gs=&prev=&cm_sp=Recommended*PD*r

ight; and http://www.hsn.com/infomercial/h2o-mop-x5-5-in-1-steam-cleaner-with-microfiber-

pads_p-6296518_xp.aspx:

41.     HSN's false and misleading sanitization claims include, but are not limited to:

a.   As the demonstrator is cleaning a bathroom with the X5's nylon brush
attachment, the host says: "who could ever find something that you could
clean your toilet with and then turn around and clean your tooth brush with
it."  Demonstrator then says, "And, basically you can do that [with the X5]."

i.   The above claim sends the false message to consumers that it would be
safe and beneficial to use the X5's nylon brush attachment to clean a
toilet and then, without disinfecting it, straightway use it to clean a
toothbrush.

b.   "When you deal with bathrooms, we talk about E. coli and Salmonella –
steam is not new technology.  Okay, let's think about this.  Go back, think
about hospitals, how do they sanitize their their [sic], you know, their
instruments.  They use steam.  Barber shops, you get a manicure and they use
their manicure/pedicure tools.  They normally steam them."

i.   The above claim sends the false and misleading message to consumers
that the X5 product will not only sanitize, but will sterilize to the level
required for hospital surgical instruments.  This is patently false.  The
Center for Disease Control's 2008 Guideline for Disinfection and
Sterilization in Healthcare Facilities requires, depending on the
specific type of steam sterilizer and the instrument to be sterilized, a
minimum of 15 minutes of exposure time at 270°F for gravity
displacement sterilizers or a minimum of 30 minutes of exposure time
at 250°F for the same type of sterilizer.  *See* Guideline for Disinfection
and Sterilization in Healthcare Facilities, 2008, Table 7, available at
http://www.cdc.gov/hicpac/disinfection_sterilization/20_00reference.h
tml.

c.   While demonstrating the X5 cleaning what appears to be a urine-stained toilet
for less than the prescribed 15 seconds per area, the demonstrator states,

"[t]his is true touchless cleaning.  You are cleaning, deodorizing, sanitizing at the same time."

d.  The demonstrator states, "I want you to listen to this.  Some of the most dangerous chemicals in your home won't be able to make this claim.  Imagine being able to say that you will be able to get 99.5% of E. coli, Salmonella, and yeast-causing bacteria with tap water."  Then, shortly thereafter, the following statement appears on the screen during the television program: "[h]elps remove 99.9% Of e. coli, salmonella and yeast-causing bacteria, and up to 98% of mold-causing bacteria when held on some hard surfaces for 10-15 seconds."  Yet, later in the program, the demonstrator makes the following misleading representation: "[k]eep [the X5 mop] moving, too.  That's what I like to tell people.  There's no need to let it sit there for too long."

e.  "And, like [the demonstrator] said, there's a lot of cleaners that can't, chemicals that can't make that claim [referring to the claim to remove bacteria]."

42.     In addition to sanitization claims, Defendants include, *inter alia*, the following false and misleading product demonstrations in their promotion of the X5 product.

43.     Thane's false and misleading product demonstrations include, but are not limited to:

a.  A depiction of the X5 mop placed over a red stain on a white carpet, where the mop is only held over the stain for a matter of seconds, and when the mop is removed, the stain is completely gone.  Meanwhile: (a) the super states in small script "[e]lapsed time.  Cleaning times may vary according to stain type"; and (b) the voice over states "effortlessly steam away stains and breathe life back into old carpet".

b.  A depiction of the hand-held X5 being placed down the disposal of a double-sided sink, which results in steam rising out of the drain on the other side of the sink.  And, while the demonstration is ongoing, the demonstrator says that the hand-held steamer is "cleaning, deodorizing, and sanitizing".

c.  Using the hand-held X5 on a wooden, porous chopping board, the demonstrator claims that the X5 "get[s] rid of bacteria from raw chicken, from fish" and "[n]eutralize[s] Salmonella".  Meanwhile, the demonstration shows a significant amount of dark brown liquid, which appears to look like wood stain, dripping off of the chopping board as a result of the steam.

        i.   This demonstration: (a) does not provide an accurate depiction of the expected use of the product; and (b) necessarily implies that removing dirty liquid will remove bacteria.

   d.   A depiction of a wood floor surface that appears to be clean, then showing the wood floor surface under a black light, which appears soiled.  In cleaning the wooden surface under the black light, the following claims are made:

        i.   "While the X5 makes it easy to clean the stains you can see, what about the ones you can't?  Under the black light, you can see a mess.  It could be viruses or bacteria.  If you have kids or pets, it needs to be cleaned.  The X5 cleans at 230 degrees with the power of microfiber, so it cleans and sanitizes without chemicals."

   e.   While cleaning what appears to be a urine stain at the back of a toilet with the hand-held steamer with the jet steam nozzle, the demonstrator states: "[c]lean, sanitize, deodorize".

   f.   A depiction of "sanitizing" children's cots in a preschool where the pre-school director states "[w]e've used [the X5] on the chairs, the sinks, the counters, to sanitize the cots down."  Meanwhile, the infomercial depicts, inter alia, a woman using the hand-held X5 approximately 8 inches from a child's cot, spraying the entire width of the cot in less than five seconds, which does not follow the X5's instruction manual for sanitization, and, upon information and belief, does not effectively sanitize the child's cot.

44.    HSN's false and misleading demonstrations include, but are not limited to:

   a.   While cleaning what appears to be a urine stain at the back of a toilet with the hand-held X5's jet steam nozzle for less than the prescribed 15 seconds, the demonstrator states, "[t]his is true touchless cleaning.  You are cleaning, deodorizing, sanitizing all at the same time."  Immediately following the above-quoted statement, the demonstrator uses the hand-held X5 to clean a filthy, urine-stained toilet rim, holding the hand-held in place for no longer than 5 seconds at a time.  Meanwhile, the X5's steam causes the now liquefied urine stain to drip off of the edge of the toilet.

   b.   Using the hand-held X5 on a plastic, porous chopping board, the demonstrator states, "I want you to listen to this.  Some of the most dangerous chemicals in your home won't be able to make this claim.  Imagine being able to say that you will be able to get 99.5% of E. coli, Salmonella, and yeast-causing bacteria with tap water."  Meanwhile, the demonstration shows a significant amount of dark brown liquid dripping off of the chopping board as a result of the steam, which necessarily implies the false and misleading message that the X5's ability to remove the dark brown liquid is indicative of its ability to kill bacteria.

    c.  A depiction of the hand-held X5 being placed down the disposal of a double-sided sink, which results in steam rising out of the drain on the other side of the sink.  And, while the demonstration is ongoing, the demonstrator says "[y]ou want to get rid of the stink in your sink—ok—run this [the X5 handheld] down your sink.  It will run through your pipes.  You can clean chemical free."

45.    Furthermore, Defendants make, the following false and misleading advertising claims regarding the nature, qualities, and characteristics of the X5 product.

46.    Thane's false and misleading product characteristic claims include, but are not limited to:

    a.  "The only five in one steam machine that cleans and sanitizes every surface of your home."

    b.  "It can even help eliminate dust mites and bed bugs."

    c.  Making numerous claims in the infomercial regarding the lack of need for chemicals with the X5 but including chemical carpet stain remover with the X5 product upon shipment to the consumer.

    d.  "You don't have to rub and scrub."  However, the infomercial shows the demonstrating rubbing and scrubbing.

47.    HSN's false and misleading product characteristic claims include, but are not limited to:

    a.  "We are the only steamer out there right now with variable steam."

        i.  This is clearly false as Euro-Pro currently sells the Shark® Professional Steam Pocket® Mop (S3601), which offers three distinct steam settings.  *See, e.g.,* Product Details available at http://www.sharkclean.com/cgi-bin/livew/site.w?location=b2c/product.w&product=S3601W&frames=no&target=main&sponsor=000006.

    b.  At the first use of the X5 in the HSN program, the demonstrator says, "I hit this button and instantly it starts to steam.  Instant Steam!"

    c.  "You press the green button and instantly it will start to steam."

        i.   Later in the presentation, the demonstrator hesitantly admits that it will take 20-30 seconds to initially produce steam.

    d.   "It's dry steam."

    e.   "When [the X5] is on, doing hard floor surfaces, turn the steam to lower, because . . . the lower the steam, the dryer the steam.  And, you want to have that dry steam on the floor, because it virtually—once you do your floors, they will virtually dry in seconds afterwards."

    f.   "Just because you don't see the steam doesn't mean it's not working."

    g.   "Anything you want to clean, you can clean it [with the X5]."

        i.   Any advertising claims which assert that the X5 can clean every surface in a consumer's home are false and misleading as there are a number of surfaces that should not be cleaned with steam, including, but not limited to, wax polished furniture or floors, unsealed or unglazed ceramic floors, and unsealed wooden and wax floors and some no wax floors.

    h.   "If you've got someone who suffers with allergies, you want to get into these little nooks and crannies, areas that have never really been cleaned."

        i.   This advertising claim sends the misleading message that the X5 can help combat allergies.

48.    The above-listed claims and/or their necessary implications are literally false and/or include false or misleading descriptions or representations of fact that misrepresent the nature, characteristics, and qualities of the X5 in violation of section 43(a)(1)(B) of the Lanham Act.

***Defendants' Design Patent Infringement***

49.    Defendants market and sell a number of accessories with the X5 product.

50.    One such accessory is the "Dusting & Polishing Wand," which includes a shaggy pocket for the wand attachment that is virtually identical to the design covered by Euro-Pro's '669 Patent and to Euro-Pro's Shark® Portable Steam Pocket® (SC 630) and accessories.

***Defendant Thane's Trademark Infringement***

51.     In at least one of Defendant Thane's 30-minute, nationally-airing infomercials for the X5, Thane uses slogans that are confusingly similar to Euro-Pro's federally registered Mark.

52.     These infringing slogans include the following: (1) "the proof is in the pad"; (2) "you can see the proof, it's right there in the pad"; and (3) "the proof is in the rag" (collectively "Infringing Slogans").

53.     Thane's use of the Infringing Slogans is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association between the X5 and Euro-Pro.

## COUNT ONE
### (False Advertising in Violation of Section 43(a)(1)(B) of the Lanham Act)
### (Against Thane and HSN)

54.     Euro-Pro hereby incorporates by reference and realleges each and every allegation of the Paragraphs above.

55.     In commercial advertising and promotion, Defendants, in active commercial competition with Euro-Pro, make numerous false and misleading claims as outlined in detail above, which include, but are not limited to false and misleading: (a) disinfecting/sanitization claims; (b) product demonstrations; and (c) claims regarding the nature and quality of the X5 product.

### *Defendants' False and Misleading Sanitization Claims*

56.     The claims contained in paragraphs 39-41 are literally false. According to the EPA—the agency responsible for regulating chemical pesticides—sanitization on hard, non-porous surfaces requires at least a 99.9% reduction of bacteria on the test surface. *See* EPA DIS/TSS 10 (http://www.epa.gov/oppad001/dis_tss_docs/dis-10.htm).

57.     Defendant Thane's X5 infomercials claims that the product "[k]ills **up to 99%** of Salmonella & E. coli" (emphasis added). And, HSN's television program claims that the product

removes **99.5%** of E. coli, Salmonella, and yeast-causing bacteria.  Thus, while Defendants promise sanitization, the product does not deliver.

58.     Reducing bacteria up to 99% or 99.5% is not sufficient to claim sanitization. Therefore, Defendants' claim that the X5 can "sanitize" is false.

59.     Especially egregious is HSN's toilet demonstration where the hand-held X5 is used to clean a filthy, urine-stained toilet for less than the prescribed 15 seconds.  And, in the midst of this process, the demonstrator says that the X5 hand-held is "cleaning, deodorizing, [and] sanitizing at the same time."

60.     Upon information and belief, the X5 does not sanitize the entirety of an extremely dirty toilet rim in less than 15 seconds as depicted in the HSN infomercial.  Nor, would it ever be accurate to claim as HSN does in its television program that it is safe or effective for a consumer to clean a toilet with the X5 nylon brush attachment and then immediately use the same device to clean his or her toothbrush.

61.     Defendants' false and misleading sanitization claims amount to a bait and switch. Because Defendants' process for sanitization is not a normal use of the X5, one of two things will likely happen: (1) consumers will purchase the product only to later realize that the sanitization process is more complicated than originally thought; or worse (2) the customer will use the X5 incorrectly thinking that he or she is sanitizing the surfaces that are being cleaned.

62.     The latter of the two scenarios is especially concerning given the Thane infomercial's pre-school testimonial which includes numerous false sanitization claims, as well as Defendants' "sanitizing" demonstrations that do not comport with the sanitization instructions in the X5 user manual.

### *Defendants' False and Misleading Demonstrations*

63. The demonstrations and the statements and representations listed in paragraphs 42-44 are either literally, or by necessary implication, false and/or misleading in violation of section 43(a)(1)(B) of the Lanham Act.

64. For the reasons stated above, these demonstrations: (a) fail to accurately depict the intended use of the X5 product and the expected results of the same; and (b) assert false claims about the characteristics and efficacy of the product, including false sanitization claims.

***Defendants' False and Misleading Claims Regarding the Nature, Qualities, and Characteristics of the X5 Product***

65. The claims listed in paragraphs 45-47 include false or misleading descriptions or representations of fact that misrepresent the nature, characteristics, and qualities of the X5 in violation of section 43(a)(1)(B) of the Lanham Act.

66. As detailed in the paragraphs above, upon information and belief, Defendants' commercial advertising of the X5 product contains false and misleading statements of fact or omissions regarding the X5's ability to sanitize, the nature, characteristics, qualities, and performance of the X5, and has provided consumers with numerous false and misleading product demonstrations.

67. Defendants cause, and have caused, their false and misleading advertising to enter interstate commerce, including by making false and misleading claims on television infomercials and/or programs aired throughout the country and various web pages.

68. Upon information and belief, Defendants make their false and misleading claims with knowledge of their false and misleading character, willfully, and with reckless disregard for their false and misleading character.

69.     Defendants' false and misleading claims have the tendency to deceive a substantial segment of their intended audience, and upon information and belief, have actually deceived a substantial segment of their intended audience.

70.     Defendants' false and misleading claims are material and likely to influence the buying decisions of the purchasing public as they relate to highly important characteristics of the product being offered, including the cleaning and sanitization capabilities of the X5.

71.     Such false statements and omissions have the effect of misrepresenting the nature and characteristics of the goods being offered by Defendants.

72.     Such false statements and omissions have the effect of misrepresenting the nature and characteristics of the goods and services being offered by Defendants' competitors, including Euro-Pro.

73.     These false statements and omissions by Defendants constitute false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

74.     As a direct and proximate result of the wrongful acts of Defendants alleged above, Euro-Pro has suffered and will continue to suffer injury and irreparable harm to its business, including but not limited to monetary injury due to diversion of sales from itself to Defendants as well as injury to its goodwill and market share.  Pursuant to 15 U.S.C. § 1117, Euro-Pro is entitled to damages for Defendants' Lanham Act violations, enhanced damages, and an accounting of profits made by Defendants on sales of the X5, and costs of the action in an amount to be determined at trial.

75.     Upon information and belief, Defendants' acts are willful, wanton, and calculated to deceive, and are undertaken in bad faith, making this an exceptional case entitling Euro-Pro to

recover its reasonable attorneys' fees in an amount to be determined at trial pursuant to 15 U.S.C. § 1117.

76.     Upon information and belief, Defendants will continue to engage in the wrongful acts alleged above unless enjoined by this Court pursuant to 15 U.S.C. § 1116.  Euro-Pro is being irreparably harmed, has no adequate remedy at law, and is further entitled to preliminary and permanent injunctive relief against Defendants' unlawful conduct.

**COUNT II**
**(Infringement of U.S. Patent No. D633,669)**
**(Against Thane and HSN)**

77.     Euro-Pro hereby incorporates by reference and realleges each and every allegation of the Paragraphs above.

78.     On March 1, 2011, the U.S. Patent and Trademark Office duly and legally issued the '669 Patent, entitled "Shaggy Steam Pocket" to inventor Mark Rosenzweig, who thereafter assigned the '669 Patent to Euro-Pro.

*79.*     The scope of the '669 Patent encompasses "[t]he ornamental design for a shaggy steam pocket, as shown and described" in the seven figures included in the '669 Patent.  Figure 1



FIG.1

of the '669 Patent covers the following design:                 .  *See* Ex. B.

80.     The '669 Patent in presumed valid pursuant to 35 U.S.C. § 282.

81.     Euro-Pro manufactures and sells the Shark® Portable Steam Pocket® (SC 630) and accessories, which is a portable, hand-held steam cleaner that includes a shaggy steam pocket covered by the '669 Patent.

82.     Defendants have infringed and continue to infringe the '669 Patent, either directly, or by contributory infringement and/or by inducement of others to infringe.

83.     Defendants' infringing acts include, but are not limited to, the manufacture, use, sale, importation, and/or offering for sale of products covered by the '669 Patent, including, but not limited to, the "Dusting & Polishing Wand" accessory that is sold with the X5 product, which is also virtually identical to Euro-Pro's Shark® Portable Steam Pocket® (SC 630) and accessories.

84.     Defendants are therefore liable for infringement of the '669 Patent pursuant to 35 U.S.C. § 271.

85.     Upon information and belief, Defendants have sold, made offers to sell, continue to sell, and/or offer to sell products infringing the '669 Patent nationwide via the Internet and in this judicial district.

86.     Defendants' infringing conduct has harmed and will continue to harm Euro-Pro, causing irreparable injury for which there is no adequate remedy at law unless enjoined by this Court pursuant to 35 U.S.C. § 283.

87.     Upon information and belief, Defendants' infringing products, including the "Dusting & Polishing Wand" accessory of the X5 product, were directly copied from Euro-Pro's Shark® Portable Steam Pocket® (SC 630) and accessories, which is covered by the '669 Patent. Upon further information and belief, Defendants' infringement of the '669 Patent is willful and deliberate.  As a result, this Court should determine that this is an exceptional case and award

Euro-Pro's attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. §

285.

**COUNT III**
**(Trademark Infringement in Violation of Section 32(1) of the Lanham Act)**
**(Against Thane)**

88.     Euro-Pro hereby incorporates by reference and realleges each and every allegation

of the Paragraphs above.

89.     Defendant Thane's conduct constitutes trademark infringement of Euro-Pro's

registered Mark in violation of section 32(1) of the Lanham Act, 15 U.S.C. § 1114.

90.     Euro-Pro has registered with the United States Patent and Trademark Office the

word mark THE PROOF IS ON THE PAD, U.S. Registration No. 3,554,904, for use in

connection with "multi-purpose steam cleaning machines and parts and accessories therefor".

*See* Ex. A.

91.     Euro-Pro has used the Mark continually since July of 2007 on promotional and

advertising materials for its steam cleaning products, including on the front of the Shark® Steam

Mop boxes.

92.     Defendant Thane, in its infomercial promoting the X5 steam cleaner and

accessories, uses the Infringing Slogans, which are confusingly similar to Euro-Pro's registered

Mark.

93.     Thane is using the Infringing Slogans in interstate commerce by including them in

at least one of its nationally televised infomercials for the X5 product.

94.      The X5 product marketed and sold by Thane is substantially related to the goods

offered by Euro-Pro.  Thane's use of the Infringing Slogans is likely to cause confusion or to

cause mistake or to deceive as to the origin, sponsorship, or affiliation of the X5 product.

22

95.     Euro-Pro has no control over the quality of the goods offered by Thane under the confusingly similar Infringing Slogans and, as a result, Euro-Pro's valuable goodwill with respect to the Mark is at the mercy of Thane.

96.     As a direct and proximate result of the wrongful acts of Thane alleged above, Euro-Pro has suffered and will continue to suffer injury, irreparable harm, and damage to its business.

97.     Pursuant to 15 U.S.C. § 1117, Euro-Pro is entitled to damages for Thane's Lanham Act violations, enhanced damages, and an accounting of profits made by Thane on sales of the X5, and costs of the action in an amount to be determined at trial.

98.     Upon information and belief, Thane's acts are willful, wanton, and calculated to deceive, and are undertaken in bad faith, making this an exceptional case entitling Euro-Pro to recover its reasonable attorneys' fees in an amount to be determined at trial pursuant to 15 U.S.C. § 1117.

99.     Upon information and belief, Thane will continue to engage in the infringing acts alleged above unless enjoined by this Court pursuant to 15 U.S.C. § 1116.  Euro-Pro is being irreparably harmed, has no adequate remedy at law, and is further entitled to preliminary and permanent injunctive relief against Thane's unlawful conduct.

## COUNT IV
**(Unfair Competition in Violation of Section 43(a)(1)(A) of the Lanham Act)**
**(Against Thane)**

100.     Euro-Pro hereby incorporates by reference and realleges each and every allegation of the Paragraphs above.

101.     Defendant Thane's conduct constitutes unfair competition in violation of section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

102.     Specifically, Thane has used the Infringing Slogans in connection with the promotion of its X5 steam mop, which is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, sponsorship, or association of the X5 product.

103.     Thane is using the Infringing Slogans in interstate commerce by including them in at least one nationally televised infomercial for the X5 product.

104.     On information and belief, Thane's activities have deceived, or are likely to deceive, a substantial portion of the purchasing public, and such deception is material in that it is likely to influence the buying decisions of the purchasing public.

105.     As a direct and proximate result of the wrongful acts of Thane alleged above, Euro-Pro has suffered and will continue to suffer injury, irreparable harm, and damage to its business.

106.     Pursuant to 15 U.S.C. § 1117, Euro-Pro is entitled to damages for Thane's Lanham Act violations, enhanced damages, an accounting of profits made by Thane on sales of the X5, and costs of the action in an amount to be determined at trial.

107.     Upon information and belief, Thane's acts are willful, wanton, and calculated to deceive, and are undertaken in bad faith, making this an exceptional case entitling Euro-Pro to recover its reasonable attorneys' fees in an amount to be determined at trial pursuant to 15 U.S.C. § 1117.

108.     Upon information and belief, Thane will continue to engage in the infringing acts alleged above unless enjoined by this Court pursuant to 15 U.S.C. § 1116.  Euro-Pro is being irreparably harmed, has no adequate remedy at law, and is further entitled to preliminary and permanent injunctive relief against Thane's unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Euro-Pro prays that the Court enter the following relief:

(a)     Adjudge that Defendants Thane and HSN have engaged in false advertising in violation of section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), with respect to the marketing and advertising of the X5 product;

(b)     Adjudge that Euro-Pro's '669 Patent has been infringed as a direct and proximate result of the acts of Defendants Thane and HSN as set forth in this Complaint in violation of Euro-Pro's rights under the Patent Act, 35 U.S.C. § 271;

(c)     Adjudge that Euro-Pro's Mark has been infringed as a direct and proximate result of the acts of Defendant Thane as set forth in this Complaint, in violation of Euro-Pro's rights under sections 32(1) and 43(a)(1)(A) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a);

(d)     Order that Defendant Thane and all officers, directors, agents, servants, employees, affiliates, attorneys, successors, and assigns of Defendant Thane, and all persons in active concert or participation therewith, be preliminarily and permanently enjoined from committing any further acts of false advertising, patent infringement, trademark infringement, and unfair competition, from using the Euro-Pro Mark, the Infringing Slogans, or any mark that is likely to cause consumer confusion and unfair competition with Euro-Pro's Mark, from committing any other acts calculated to confuse or deceive consumers, and from otherwise unfairly competing with Euro-Pro in any manner;

(e)     Order that Defendant HSN and all officers, directors, agents, servants, employees, affiliates, attorneys, successors, and assigns of Defendant HSN, and all persons in active concert or participation therewith, be preliminarily and permanently enjoined from committing any

further acts of false advertising and patent infringement, any other acts calculated to confuse or deceive consumers, and from otherwise unfairly competing with Euro-Pro in any manner;

(f)     Adjudge that Defendant Thane has willfully and deliberately engaged in false advertising, patent infringement, trademark infringement, and unfair competition and find that this is an "exceptional case" under the Lanham Act and the Patent Act;

(g)     Adjudge that Defendant HSN has willfully and deliberately engaged in false advertising and patent infringement and find that this is an "exceptional case" under the Lanham Act and the Patent Act;

(h)     Order that all products infringing Euro-Pro's '669 Patent be seized, impounded, and destroyed;

(i)     Order that Defendants Thane and HSN identify, recall, and destroy from any third party all false and misleading marketing, advertising, and promotional materials used in connection therewith, regardless of whether such materials have been disseminated, or are to be disseminated in the future;

(j)     Order that Defendants Thane and HSN issue corrective advertising or notices making clear that the identified statements, claims, and product demonstrations were false and misleading;

(k)     Order that Defendants Thane and HSN each file with the Court and serve on Euro-Pro's counsel, within 10 days after entry of the Court's injunction, a sworn statement as provided in 15 U.S.C. § 1116, setting forth in detail the manner and form in which each Defendant has complied with the injunction;

(l)      Award Euro-Pro its actual damages that Euro-Pro has incurred as a result of Defendants' infringements and false advertising pursuant to 15 U.S.C. § 1117 in an amount to be proven at trial;

(m)      Award Euro-Pro treble its actual damages resulting from Defendants' violations of the Lanham Act pursuant to 15 U.S.C. § 1117;

(n)      Award an accounting and disgorgement of Defendants' profits resulting from their violations of the Lanham Act pursuant to 15 U.S.C. § 1117, in an amount to be proven at trial;

(o)      Award Euro-Pro its costs and reasonable attorneys' fees from Defendants pursuant to 15 U.S.C. § 1117 and 35 U.S.C. § 285;

(p)      Award Euro-Pro Defendants' total profits resulting from their infringement of Euro-Pro's '669 Patent pursuant to 35 U.S.C. § 289, in an amount to be proven at trial; and

(q)      Award such other relief as may be just and proper.


**JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all claims as to which jury trial may be had.


Dated: December 19, 2011

/s/ Allen S. Rugg_____
Jason M. Honeyman (BBO #547165)
jhoneyman@wolfgreenfield.com
Allen S. Rugg (BBO #547165)
arugg@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA  02210-2206
Phone: (617) 646-8000
Fax: (617) 646-8646

Roger A. Colaizzi (*pro hac vice* filed herewith)
Christopher S. Crook (*pro hac vice* filed herewith)
VENABLE LLP
575 7th Street, N.W.
Washington, DC  20004
(202) 344-4000
Fax: (202) 344-8300
racolaizzi@venable.com
cscrook@venable.com